Patrick M. Flatley
United States Bankruptcy Judge
Dated: Tuesday, December 18, 2007 1:35:19 PM

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                                    )
                                          )
JAMES A. FIDDLER and                      )        Case No. 04-4213
JOYCE A. FIDDLER                          )
                                          )
                Debtors.                  )        Chapter 13

### MEMORANDUM OPINION

This case comes before the court on the motion of the Chapter 13 trustee (the "Trustee") to modify the confirmed Chapter 13 plan of James and Joyce Fiddler (the "Debtors") to pay all filed claims 100%. The Trustee alleges that a substantial change in circumstances has occurred in that the Debtors' real property, which they valued at $112,000 as of their November 30, 2004 petition date, has increased in value to at least $204,000, as evidenced by the sum the Debtors received from a partial sale of their real property and from the proceeds received from a subsequent refinancing.

The court held a hearing on the Trustee's motion in Martinsburg, West Virginia on October 5, 2007, at which time the court afforded the parties the opportunity to supplement their positions with regard to the proposed modification. That briefing is now complete, and for the reasons stated herein, the court will deny the Trustee's motion.

### I. BACKGROUND

When the Debtors filed their November 30, 2004 Chapter 13 bankruptcy petition, they stated that they jointly owned a house and lot at 125 E. Park Avenue in Ranson, West Virginia. The Debtors declared that the current market value of their 100% ownership interest was $112,000, and that the property was subject to a deed of trust granted in favor of Deutche Bank Trust Company Americas ("Deutche Bank"),

1

that secured a note in the approximate amount of $88,151. The Debtors real property consists of five contiguous lots, and the Debtors' manufactured home occupies only one of those five lots.

On June 8, 2005, this court confirmed the Chapter 13 pot-plan of reorganization proposed by the Debtors. Pursuant to the plan, the Debtors agreed to pay a total of $22,503 over 60 months, which was enough to pay the costs of administration, the pre-petition arrearage on the secured debt owed to Deutche Bank, and about 1% to the Debtors' unsecured creditors. Ongoing monthly payments to Deutche Bank on the Debtors' note and deed of trust were to be made directly by the Debtors and not through the Trustee.

Meanwhile, on May 10, 2005, Deutche Bank filed a motion for relief from the automatic stay on the grounds that the Debtors had failed to pay their post-petition monthly secured debt obligations. The Debtors and Deutche Bank were able to resolve their differences pursuant to an agreed order; however, the Debtors failed to fulfill the terms of the agreed order and Deutche Bank filed a notice of default on December 23, 2005. In response to the notice of default, the Debtors filed a motion to sell a portion of their real property for about $70,000 to pay off the arrearage and to pay down a portion of the remaining secured debt. The Debtors further related that they believed their entire property (all five lots and the mobile home) to be worth $180,000.

Concurrent with the motion to sell, on January 24, 2006, the Debtors filed a motion to refinance their home for $130,000, and to use those proceeds to payoff the note owed to Deutche Bank and to payoff their Chapter 13 plan pursuant to the terms of the confirmation order. The Trustee objected to the motion on the basis that, should the Debtors obtain the refinancing, all creditors should be paid 100% of their filed claims rather than the 1% set forth in the Debtors' confirmed plan.

Thereafter, the Debtors abandoned their motion to refinance, and moved forward on the sale of a portion of their real property. Pursuant to the court's October 26, 2006 order, the Debtors were authorized to sell part of their real estate for $87,000, nearly $3,000 of which was reimbursement for the Debtors' costs in rerouting a sewer line, meaning that the value of the real property sold by the Debtors was about $84,000.

The proceeds of the sale, however, were insufficient to pay off the deed of trust in favor of Deutche Bank, and when the Debtors failed to make further payments following the sale, Deutche Bank filed a

2

second motion for relief from the automatic stay on April 4, 2007. In response to the new motion, the Debtors again proposed to refinance the remaining portion of their real property by obtaining a new loan in the amount of $78,000, which was approved by the court on July 9, 2007.

When the Debtors refinanced their property, however, the new loan amount was for $120,000 – not the $78,000 authorized by the court. After the costs of the refinancing were paid, and after the note secured by the deed of trust in favor of Deutche Bank was satisfied, the Trustee received about $80,369 in proceeds. The Debtors seek to have the Trustee payoff the remainder of the Debtor's confirmed Chapter 13 plan ($10,971), but the Trustee has filed a motion to modify the Debtors confirmed plan to require all creditors be paid 100%, which would require the Debtors to pay the Trustee $23,155 of the refinancing proceeds.

## II. DISCUSSION

The Trustee asserts that a substantial and unanticipated change in circumstances has occurred since confirmation of the Debtors' plan on June 9, 2005, such that the Trustee's motion to modify the Debtors' plan pursuant to 11 U.S.C. § 1329 is proper. More specifically, pursuant to § 1329(a)(1), the Trustee seeks to "increase . . . the amount of payments on claims of a particular class provided by the plan" based on the fact that the Debtors' real property increased in value from $112,000 in November 2004 to about $204,000 by July 2007.

The Debtors respond that money received from a mortgage refinance is not income that can be captured by the Trustee and that there has not been any change in their circumstances to warrant a modification.

In the Fourth Circuit, *res judicata* applies to motions to modify confirmed plans; therefore, there must be an unanticipated, substantial change in circumstances before a confirmed plan may be modified. *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989) ("The doctrine of *res judicata* bars an increase in the amount of monthly payments only where there have been no unanticipated, substantial changes in the debtor's financial situation."); *In re Butler*, 174 B.R. 44, 47 (Bankr. M.D.N.C. 1994) ("[T]here is no reason why either a creditor or a debtor should be permitted to relitigate issues which were decided in the confirmation order or which were available at the time of confirmation but not raised by the parties."). A determination of whether modification is appropriate is a three-part inquiry: (1) did "the debtor experience

3

a substantial and unanticipated change in his post-confirmation financial condition"; (2) if so, then is the proposed modification "limited to the circumstances provided by § 1329(a)"; and (3) if so, "then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)(1)." *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 150 (4th Cir. 2007). The Chapter 13 trustee, as the party moving for modificaiton, bears the burden of proof. *E.g.*, *Max Recovery v. Than (In re Than)*, 215 B.R. 430, 434 (B.A.P. 9th Cir. 1997) (stating that the moving creditor "bore the burden of proof to show facts supporting modification . . . ."); *In re Osborne*, No. 05-27728, 2007 Bankr. LEXIS 451 at *3 (Bankr. N.D. Ohio Feb. 5, 2007) ("The Trustee bears the burden of proof on his request to modify Debtors' confirmed plan."); *In re Krapf*, 355 B.R. 545, 548 (Bankr. D.S.C. 2006) (same).

To have an unanticipated, substantial change in circumstances between the date of confirmation and the date of modification means that the debtor's current circumstances must have been unknown at the time of the confirmation – it is an objective test. *E.g.*, *In re Murphy*, 474 F.3d 143, 152 (4th Cir. 2007) (holding that the increase in value of a condominium from $155,000 to $235,000 in eleven months – a 51.6% increase – was both substantial and unanticipated given pre-existing, local real estate market trends); *Arnold*, 869 F.2d at 243 (finding that a $120,000 increase in income over two years was an unanticipated and substantial change in circumstances); *In re Furgeson*, 263 B.R. 28, 37-38 (Bankr. N.D.N.Y. 2001) ("In the instant proceeding, the acquisition of $5,800 by the Furgesons is clearly both unanticipated, considering it was not possible at confirmation for the Trustee to foresee the prosecution of the Debtors' § 362(h) claim . . . and substantial, considering . . . . the increase in the dividend received by the unsecured creditor class from 5% to 31% . . . .").

In this case the Trustee has demonstrated that the value of the Debtors' property has substantially increased in value from the petition date. The Debtors' real property had a value of $112,000 as of their November 30, 2004 petition. The Debtors sold a portion of that real property for about $84,000 in the Fall of 2006, and refinanced the remaining portion of their real property in the summer of 2007 for $120,000. Thus, it appears that after the Debtors filed bankruptcy the value of their real property increased to approximately $204,000. This represents an increase of about $95,000 or 82% between November 30, 2004 and July 2007.

However, the Trustee, who as the moving party bears the burden of proof, has failed to establish

4

that the change in the value of the Debtors' real property was unanticipated.  There is no evidence in the record of the real estate trends in Ranson, West Virginia in the years leading up to the Debtors' November 2004 bankruptcy petition to demonstrate that an 82% increase over roughly 32 months (appreciation at an annual rate of about 25%) was unanticipated.  In fact, it is generally known within the territorial jurisdiction of this court that from 2003-05 real estate prices were sharply rising in the Eastern Panhandle of West Virginia, which includes the Debtors' hometown of Ranson, which is located a short distance from both Martinsburg, West Virginia, and Washington, D.C.  For example, the State Journal reported on December 1, 2005 that "[t]he Hagerstown, Md., Martinsburg, W. Va. MSA, where house prices were rising at just under booming levels by the end of 2004, posted its own record gains in the four quarters ending June 2005 of 24.5%."  Pam Kasey, *Some West Virginia Housing Prices Remain Strong*, The S t a t e   J o u r n a l   ( D e c .   1 ,   2 0 0 5 ) ,   a v a i l a b l e   a t http://www.statejournal.com/story.cmf?func=viewstory&storyid=7026  (visited Dec.17, 2007); *see also* Office of Federal Housing Enterprise Oversight, *OFHEO House Price Index: House Price Gains Continue to Accelerate*, p. 21 (December 1, 2004), available at www.ofheo.gov (visited November 27, 2007) (stating that  in the one-year period preceding the end of the Third Quarter of 2004, real property values in Washington-Arlington-Alexandria, DC-VA-MD-WV Metropolitan Statistical Area increased 24.01%.).

The Trustee is charged with knowledge of real estate market trends in the district.  *Murphy*, 474 F.3d at 151.  The Trustee did not act to capture any substantial increase in real property value under the terms of the confirmation order, and is now – under the *res judicata* effect of confirmation – precluded from relitigating issues that could have been litigated at the time of confirmation.  *See, e.g.*, *id*. at 152 (finding that a 51.6% increase over eleven months in the value of real property was an unanticipated change in circumstances when in the two years preceding confirmation the historical increase in local property values was only ten to thirteen percent per year); *In re Brumm*, 344 B.R. 795, 803-04 (Bankr. N.D.W. Va. 2006) (finding that a 15% increase in the value of real property over 2 ½ years was not an unanticipated change in circumstances); *In re Fitak*, 121 B.R. 224, 228 (Bankr. S.D. Ohio 1990) (holding that the "suggestion that an increase in real estate values over a fifty-seven month period could not be reasonably anticipated lacks credulity and merit.").

5

Of course, the Trustee does not have the benefit of prevision so as to determine future real estate trends, and the Trustee may well have contemplated that the real estate price increase of 2004 was threaded together with strings of gossamer. In this court's view, however, it is enough that in the twelve-month period preceding the Debtors' bankruptcy petition (and in the eighteen-month period preceding their confirmation hearing) real estate values were experiencing substantial increases, and based on this trend, it was not unanticipated that real estate values may rise even further following the Debtors' November 30, 2004 petition date and June 8, 2005 plan confirmation date.

### III. CONCLUSION

In sum, because the post-confirmation increase in value of the Debtors' real property was anticipated by the parties before confirmation, and because neither the Debtors' plan nor the confirmation order captures post-petition appreciation in real property for the benefit of the Debtors' creditors, the Trustee is precluded from seeking modification of the Debtors' plan. The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.